IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
DENNIS REEDY,                  )
                               )
          Plaintiff,           )   Civil Action No. 06-758
                               )
    v.                         )   Judge McVerry
                               )   Magistrate Judge Caiazza
CSX TRANSPORTATION, INC.,      )
t/d/b/a CSX,                   )
                               )
          Defendant.           )
```

**OPINION AND ORDER**

**I.   OPINION**

The parties' cross-motions to exclude the testimony of the others' liability experts (*see* Docs. 15 and 17) will be denied, consistent with the analyses below.[1]

**BACKGROUND**

In this diversity action, the Plaintiff Dennis Reedy claims negligence against the Defendant CSX for injuries sustained on his job at Keystone Iron & Metal Co. ("Keystone"). *See generally*

---

[1] Although there is little definitive case law on the issue of whether a motion to strike an expert is considered a non-dispositive matter subject to resolution by a magistrate judge, at least one court has expressly so held, and several others have suggested in passing the same. Coppedge v. K.B.I., Inc., 2007 WL 397495, *1 n.1 (E.D. Tex. Feb. 1, 2007) (reviewing cases). Given the timeliness concerns raised by the parties' pending mediation on June 7, 2007, *see* Doc. 14, the undersigned will eschew the report and recommendation process and follow the law permitting magistrate judge review. Importantly, the court notes that this is not a case where an unfavorable *Daubert* ruling is dispositive of the Plaintiff's claims. *Cf.*, *e.g.*, Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061, 1070-71 (2006) ("[w]ith all but the most self-evident medical malpractice actions," plaintiff "must provide a medical expert who will testify as to the elements of duty, breach, and causation") (citation omitted).

Compl., attached to Notice of Removal (Doc. 1). Keystone handles and processes scrap metal and, on October 25, 2005, CSX delivered to it an empty open-top gondola car ("the Rail Car" or "the Car"). *See generally* Def.'s Br. (Doc. 18) at 1. After the Car was parked, and consistent with usual practices, Keystone employees began moving it to be spotted for loading. *Id.* at 3. The airbrakes, one of two braking systems on the Car, was disengaged, and the handbrake was applied to slow and stop the Car. *Id.* at 3, 4-5.[2] Once the Car was loaded, it was parked in an area having a downgrade slope of less than two percent, where it awaited pickup by CSX; again, it was secured by the handbrake. *See id.* (citing record evidence).

The Rail Car began to roll, Mr. Reedy moved the truck he was operating into its path, and the Car collided with the truck, thereby injuring the Plaintiff. *See generally* Compl. at ¶ 14. According to his pleadings, Mr. Reedy took this action to prevent the Car from rolling into a public railroad crossing, *see id.* at ¶¶ 12-13, and the Defendant's liability expert does not question his judgment in this regard. *Cf.* discussions *infra*.

The parties' theories of causation are straightforward enough. CSX believes that the Plaintiff's co-worker, James Ramsey ("Mr. Ramsey"), misapplied the handbrake. *See generally*

---

[2] The parties are in agreement the airbrakes did not cause the accident described below, so that system is irrelevant for the purposes of this lawsuit.

Def.'s Br. (Doc. 18) at 7; Expert Rpt. of Philip J. Daum, P.E. (filed as Ex. 4 to Doc. 15) at 5 ("[t]he rolling of the [C]ar . . . could not have occurred unless the handbrake . . . had not been properly applied").[3]  The Plaintiff and his expert believe that mechanical failure(s) and/or improper maintenance of the Car's handbrake system proximately caused the accident.  *See generally* Expert Rpt. of Bob R. Tucker (attached as Ex. 5 to Doc. 20) (handbrake slipped and brake shoes/pads "were badly worn," causing Car to roll).

Each party seeks to preclude the testimony of the other's liability expert, and their Motions are now ripe for adjudication.

**ANALYSIS**

    **A.**    **The Defendant's Expert, Mr. Daum**

The Plaintiff attacks Mr. Daum's reliance on his inspection of the Rail Car in November 2006, over one year after the accident and following the Car's continued use for hundreds of miles.  *See generally* Pl.'s Br. (Doc. 16) at 4.  Counsel relies on the Pennsylvania common law doctrine of "remoteness," which allows the introduction of evidence regarding the condition of a

---

[3]  Despite his co-worker's alleged negligence, the Plaintiff's employer, Keystone, has not been named as a defendant.  This presumably is so given the operation of Pennsylvania's Workers' Compensation law.  *See generally* Farabaugh v. Pennsylvania Turnpike Comm'n, 911 A.2d 1264, 1266 n.1 (Pa. 2006) (making same assumption in negligence case where employer was not sued).

physical object only if "accompanied by proof that it has not changed in the mean[time]." See Ritson v. Don Allen Chevrolet, 336 A.2d 359, 362 (Pa. Super. 1975) (citations omitted). This doctrine parallels federal law requiring "substantial similarity" between an expert's experiment/testing conditions and those of the accident in suit. See, e.g., Griffin v. Hickson, 2002 WL 988006, *4 (E.D. Pa. May 9, 2002) (citations omitted).

These inquiries are the "flip side" of one another, so the court need not make a choice-of-law determination. The question is whether Mr. Daum's report and anticipated testimony impermissibly rely on observations made in November 2006 regarding physical conditions of the Car that had substantially changed since the time of the accident.

The first component examined by Mr. Daum was the Car's handbrake housing, which contains gears with teeth. See Daum's Rpt. at 3. The expert relies on CSX maintenance records to conclude that no components in the housing were replaced after the accident. Id. He therefore posits that the gears were in the same (if not, the court observes, a further deteriorated) condition at the time of the inspection than when the accident occurred. Id. Based on his examination, Mr. Daum has opined:

> The condition claimed by Mr. Ramsey, where he describes the handbrake skipping a tooth and the chain loosening, could not exist unless there was physical evidence, such as teeth missing from gears. No such physical evidence exists.

*Id.*

The court agrees with the Defendant that, absent evidence of CSX's replacement of the handbrake housing components, Mr. Daum's examination would satisfy the "remoteness" and "substantial similarity" tests annunciated above. Simply put, if none of the subject parts were replaced, their condition could only have deteriorated over the course of the Car's additional use, not improved. The Plaintiff, however, questions the veracity of CSX's evidence:

> [T]here is a lack of service documentation for the [C]ar during the time it was in service post-accident. Specifically, it was admitted during the deposition of [the] Defendant's expert that an annual brake test . . . was performed during 2006, but no documentation [has been] provided by [CSX]. . . . [T]o assume that no cogs[ or] gears . . . were replaced during this brake test requires the Court to take a leap of faith [and] assume that the [C]ar was in essentially the same condition in November of 2006 as it was [at the time of the accident].

*See* Pl.'s Br. in Opp'n (Doc. 20) at 3.[4]

---

[4] Counsel also suggests that there exists an issue of fact regarding the potential presence of orange paint on the teeth of the gear in question. *See* Pl.'s Reply Br. (Doc. 22) at 4 n.2. The Plaintiff relies on Mr. Daum's testimony that it was "possible" his inspection video revealed orange paint on the gear, suggesting the part had been replaced. *See* Dep. Tr. of P. Daum at 74 (attached as un-numbered Ex. to Doc. 22); *but see id.* (opining that discoloration of gear was result of "normal rust and grime"). Presumably, counsel theorizes that new gears are painted, and all of the paint would have been worn off an old gear. Even indulging the Plaintiff's theory, the presence of orange paint in November 2006 would be significant only if it was completely absent at the time of the accident. In any event, the "orange paint" theory appears too tenuous to support the exclusion of

Defense counsel appears to indicate that the 2006 annual brake test contemplated by the Plaintiff did not occur. *See generally* Def.'s Opp'n Br. (Doc. 19) at 5. The court cannot be sure, however, given the difference in terminology used by the parties. *Cf. id.* ("Contrary to [the] Plaintiff's intimations, the record is devoid of proof that a <u>single-car test</u> was performed" between time of accident and Mr. Daum's inspection) (emphasis added).

Also absent is an adequate explanation regarding the evidence upon which CSX relies to show a lack of replacement. The Defendant frequently cites its "AAR-CRB History" on the Car, but fails to provide background information regarding this report; nor does there appear any sworn testimony, on personal knowledge, that any repairs to the Car would, either by necessity or as a result of standard operating procedures, be reflected on the AAR-CRB History.[5]

---

Mr. Daum's testimony, especially if the Defendant can show to the court's satisfaction that any repairs to the Car would have been reflected in its maintenance records. *See* discussion *infra* in text.

[5] The Defendant's submissions indicate that the "AAR" is the Association of American Railroads. *See* Doc. 18-9 at 2. The evidence does appear to show that the AAR provides a series of detailed rules, compliance codes and procedures, *See id.* The court is uncertain, though, whether the AAR's rules and/or protocols are mandatory, industry standard, tied to federal, state or local regulations or certification, *et cetera*.

These things said, the Plaintiff's argument begs the question of how CSX can "prove a negative," namely, that the gear housing components were not replaced despite the lack of any evidence they were.  In the court's view, this could be established by the sworn statement(s) of an appropriate CSX representative stating on personal knowledge that, if any repairs were made to the Rail Car, they would be reflected in the AAR-CRB History or some other existing documentation.  If Defense counsel is capable of producing such evidence, CSX's failure to provide documentation regarding a purported "annual brake test" in 2006 would be immaterial.

In an effort to resolve the matter before the June 7th mediation in this case, the Defendant will be ordered to submit such an affidavit (if it can) within eleven (11) days of this Order.  Presuming the submission eliminates reasonable doubt regarding whether the Car's handbrake housing components were replaced, Mr. Daum will be permitted to offer opinions and testimony based on his November 2006 inspection.  Otherwise, and likely after the mediation, the court will order an evidentiary hearing to make a factual determination regarding whether replacements were made.[6]

---

[6] Although the current rulings are neither tentative nor advisory, they are being made now to provide guidance for the purposes of the parties' mediation.  If, based on the analyses herein, portions of the liability experts' reports or testimony should be stricken or precluded at trial, these matters can be later revisited in the event mediation fails.

Next is the issue of the Rail Car's brake "shoes" and/or "pads."[7]  CSX concedes that two of the Car's eight brake shoes were replaced the day after the accident, and that the replaced shoes possessed brake pad material of a thickness at or less than the required industry standard of 3/8".  *See* Def.'s Opp'n Br. at 5, 10.  On this evidence alone, any testimony of Mr. Daum relying on the condition of the brake pads, post-accident, fails the "remoteness" and "substantial similarity" tests.

This does not end the inquiry, however, because the expert's report does <u>not</u> appear to rely on the condition of the brake pads at the time of the November 2006 inspection.  *See* Daum's Rpt. at 4-5.  Rather, Mr. Daum relies on the fact witness testimony of Mr. Ramsey and others to assert that the thickness of the brake pads still should have prevented the Car from rolling.  *Id.* ("where a brake shoe's surface area has [any] remaining composition material, it is still fully effective in braking a car").  Irrespective of how convincing a jury may find this opinion, the Plaintiff has not shown it impermissible under

---

[7]  On a rail car, brake shoes and pads do not appear to function as part of separate brake systems as they do in automobiles.  *Compare* website at http://www.familycar.com/brakes.htm#Disc%20Brake (in an automobile, "[t]he typical brake system consists of disk brakes in front," which utilize brake pads, and "drum brakes in the rear," which utilize brake shoes) *with, e.g.*, Def.'s Opp'n Br. at 10 ("With regard to the two replaced brake shoes [on the Car], it is undisputed that both possessed brake pad material [whose] thickness was 3/8" or less.").  While the undersigned does not pretend to possess expertise on the matter, the important point is that the thickness of the Car's brake pads has some interrelationship with CSX's post-accident replacement of brake shoes.  *See* discussion *infra* in text.

*Daubert* or Federal Rule 702, nor does it implicate the doctrines of remoteness or substantial similarity.

As discussed further below, the law is clear that neither party may filter fact evidence and testimony through its expert merely to lend credence to the same. *See, e.g.*, <u>Nimely v. City of New York</u>, 414 F.3d 381, 398 (2d Cir. 2005) (courts should disallow expert testimony offered to "improperly bolster the account[s] given by the fact witnesses"; party cannot use expert opinion to expound upon "the credibility of trial testimony from crucial fact witnesses") (citations omitted); <u>S.E.C. v. Lipson</u>, 46 F. Supp.2d 758, 763 (N.D. Ill. 1998) (under *Daubert*, "helpfulness" requirement dictates that "[e]xpert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand"; "expert testimony must not be allowed to cross over the line of helpfulness and . . . invade the quintessential jury function of determining the credibility of witnesses") (citation omitted).  While Mr. Daum skirts the line in this regard[8] (and the Plaintiff's expert arguably jumps over it with both feet[9]), this is a separate issue

---

[8]  *Compare* Daum's Rpt. at 4 ("There is no objective proof that there was any type of gapping between the brake shoes and the wheels.") *with* Dep. Tr. of J. Ramsey (filed under Doc. 15-6) at 50 (post-accident condition of two brake pads would allow someone to "probably slide a paper envelope" between those pads and wheels).

[9]  *See* Tucker's Rpt. at 3 ("Mr. Ramsey was well qualified to determine if the handbrake was working [im]properly based on his many prior years of railroad industry employment.").

from "remoteness," and the Plaintiff's objection is without merit.

Last is Mr. Daum's opinion that, based on his November 2006 inspection, "the slack adjuster properly lengthened and shortened to maintain proper spacing of the brake shoes adjacent to the wheels." Daum's Rpt. at 4. Plaintiff's counsel represents:

> As stated by both Messrs. Daum and Tucker, <u>brake shoe thickness</u> directly [a]ffects piston travel length, and also <u>is critical in determining whether the slack adjuster is functioning properly</u> . . . .

*See* Pl.'s Reply Br. at 3 (citing record evidence, emphasis added). Having reviewed the evidence cited by counsel, the court possesses insufficient expertise to determine whether a slack adjuster's functioning indeed is affected by brake pad thickness. Assuming it is, Mr. Daum's post-accident examination of the slack adjuster would be too "remote" given CSX's admitted replacement of two brake shoes the day after the accident. In light of the court's inability to determine whether the November 2006 testing of the slack adjuster reflected condition(s) substantially similar to ones existing at the time of the accident, an evidentiary hearing is necessary to determine the admissibility of Mr. Daum's testimony in this regard.[10]

---

[10] Normally, it would be the Defendant's burden to demonstrate substantial similarity. *See generally* <u>Hall v. United Ins. Co. of Amer.</u>, 367 F.3d 1255, 1261 (11th Cir. 2004) ("[t]he burden of laying the proper foundation for the admission of expert testimony is on the

As for the remaining portions of Mr. Daum's report, the Plaintiff has not shown how they implicate the remoteness and/or substantial similarity standards. Otherwise, counsel has failed to level a meaningful *Daubert* challenge, and there is no basis for rejecting the remainder of the report.

### B.   The Plaintiff's Expert, Mr. Tucker

In seeking to preclude this expert's testimony, the Defendant argues that he has "failed to employ any scientific or technical method or procedure" in support of his opinions. Def.'s Br. at 9. Counsel also presents two somewhat related themes: (1) Mr. Tucker has not supported his causation theory with "any testing or hands-on operation of the railcar's handbrake" components; and (2) the expert has failed to account for an obvious alternative explanation for the accident, namely Mr. Ramsey's failure to properly set the handbrake. *See generally* Def.'s Br. at 6-7.

---

party offering the expert") (citations and internal quotations omitted). Here, though, it is the Plaintiff who has failed to sufficiently explain the interrelationship between the brake pads and the slack adjuster, despite representations in his brief that they exist and are significant. As for the potential evidentiary hearing regarding the replacement of handbrake housing components, this is appropriate given the Plaintiff's calling upon the Defendant to further prove a negative. *See generally* U.S. v. Frazier, 387 F.3d 1244, 1274 n.4 (11th Cir. 2004) ("the procedural handling of an objection to proposed expert testimony," including whether to have evidentiary hearing, "is a matter committed to the trial court's discretion") (citation omitted).

The problem with the Defendant's position, however, is that it demands too much of Mr. Tucker's opinions. The expert is <u>not</u> required to demonstrate, for example, that Mr. Ramsey was truthful and unmistaken in testifying that the handbrake "slipped" when he attempted to set it. *Cf. generally* Ramsey's Rpt. at 3. To the contrary, Federal Rule of Evidence 703 permits an expert to "rely on facts from firsthand knowledge or observation, <u>information [to be] learned at the hearing or trial</u>, and [even] facts learned out of court." <u>Stecyk v. Bell Helicopter Textron, Inc.</u>, 295 F.3d 408, 414 (3d Cir. 2002) (emphasis added). Once the expert has identified a "factual foundation in the record," which Mr. Ramsey's sworn statements provide here, "the burden of exploring [the expert's] facts and assumptions" falls on "opposing counsel [through] cross-examination." *Id.* (citations omitted).

In essence, both experts in this case are attempting to do the same thing. Based on facts in the record (and, in Mr. Daum's case, his November 2006 inspection to some degree), they are offering specialized knowledge and experience to state opinions regarding the most likely cause of the accident. Under Rule 703, Mr. Tucker's decision to decline inspection of the car, over one year after the accident occurred, does not make his opinions any less admissible than Mr. Daum's. *See* discussion *supra* (expert may rely on "firsthand . . . observation" <u>or</u>

"information learned at the hearing or trial").  Nor does the rule requiring experts to exclude obvious alternative explanations vitiate Mr. Tucker's permissible use of facts in the record to support one of the only two possible causes identified by the experts (*i.e.*, mechanical failure versus human error). And while Mr. Daum's later examination of the handbrake housing components, if admissible, certainly would undermine Mr. Ramsey's testimony that the handbrake "slipped," this goes to the fact witness' credibility and is for the jury to weigh; not the court in its "gatekeeper" role under *Daubert*.

These conclusions extend to the Defendant's arguments regarding the Car's worn brake pads and the excessive brake piston travel.  Although counsel questions Mr. Ramsey's testimony regarding brake pad thickness, *see* Def.'s Br. at 11, CSX must concede that at least two of the shoes were worn to 3/8" inches or less, in excess of industry standard.  *See* discussion *supra*; *see also* Dep. Tr. of J. Ramsey at 50 (inspection just after accident revealed that one "could probably slide a paper envelope" between two pads and their wheels, and two other pads "were worn down real bad [sic]").  In addition, the Plaintiff's expert has opined based on his specialized knowledge and experience that worn brake pads cause the cylinder piston travel to extend beyond safe limits.  *See, e.g.*, Tucker's Rpt. at 4. There exists some factual basis in the record to support this

-13-

opinion, and Rule 703 dictates that the Defendant's challenges are properly addressed through cross-examination rather than a finding of non-admissibility. *See* discussion *supra*.

Finally are CSX's general arguments regarding the alleged lack of scientific procedure and/or methodology to support Mr. Tucker's opinions. *See generally* Def.'s Br. at 8. While the Defendant's brief makes reference to the Supreme Court's decision in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999), *see id.* at 7, counsel's arguments do not account for the decision's recognition that different considerations arise within the context of non-scientific experts. Through its reading of *Kumho*, the Third Circuit Court has recognized that "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts . . . in every case." U.S. v. Davis, 397 F.3d 173, 178 (3d Cir. 2005). Indeed, the *Daubert* factors are "often . . . of little use in evaluating non-scientific expert testimony," *see id.*, and where appropriate, the "relevant reliability concerns may focus upon personal knowledge or experience." U.S. v. Ford, 481 F.3d 215, 219 n.5 (3d Cir. 2007) (quoting *Kumho*).

In this case, both experts rely on their impressive personal knowledge and experience in the railroad industry. *See* Pl.'s Opp'n Br. at 5 (Mr. Tucker has worked on railroad since he was 17, and has 30 years of investigation experience regarding

-14-

accidents involving train movement); Appendix B to Daum's Rpt. (expert's curriculum vitae, revealing 24 years of mechanical engineering experience in, among other things, railcar design including brake systems). The court has little difficulty concluding that these experts' specialized knowledge and experience lend reliability to their opinions, at least to the extent contemplated above. *See, e.g.*, <u>Betterbox Commc'ns Ltd. v. BB Techs., Inc.</u>, 300 F.3d 325, 328-29 (3d Cir. 2002) (district court did not err in allowing expert testimony based on his "personal knowledge [and] experience" rather than "a methodology that satisfie[d] the *Daubert* factors"; expert's "practical experience sufficed under [the] liberal test" of whether he "possess[ed] skill or knowledge greater than the average layman") (citations omitted, some internal quotations in original). Which expert's permissible opinions are more persuasive is for the jury to decide. *See, e.g.*, <u>Fillebrown v. Steelcase, Inc.</u>, 2003 WL 1191162, *3 (3d Cir. Feb. 24, 2003) ("*Daubert* does not set up a test of which opinion has the best foundation," and "[i]t [is] appropriate for the jury to determine which of the experts' opinions [is] the most persuasive") (citing and quoting binding published Third Circuit precedent).

For all of the reasons stated above, the court enters the following:

## II.  ORDER

The parties' cross-Motions to exclude the testimony of liability experts (**Docs. 15 & 17**) are **DENIED**, consistent with the analyses in the above Opinion.  In addition, the Defendant may submit, within eleven (11) days of the date of this Order, the affidavit of an appropriate CSX representative stating on personal knowledge that, if repairs were made to the Rail Car's handbrake housing, they would be reflected in the AAR-CRB History or some other existing documentation.

THESE THINGS ARE SO ORDERED.


May 18, 2007                                  *Francis X. Caiazza*
                                              Francis X. Caiazza
                                              U.S. Magistrate Judge

cc (via email):

Charles A. Frankovic, Esq.
Anthony J. Rash, Esq.